IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHRISTOPHER PEREZ § § *Plaintiff,* § § v. § § CITY OF FLORESVILLE, § CHIEF OF POLICE LORENZO § HERRERA, LIEUTENANT BILLY § HERRERA, and SERGEANT THOMAS § SILVAS, all individuals being sued § In their official capacities § **Defendants.** § § | Civil Cause No.  5:23-cv-990 DEMAND FOR JURY TRIAL |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff, Christopher Perez, (hereinafter "Plaintiff" or "Officer Perez"), by and through his undersigned attorney, complaining of Defendants, and respectfully alleges as follows:

### NATURE OF COMPLAINT

1. This is a civil rights action in which the Plaintiff seeks relief for the violation of Plaintiff's rights secured by Title VII (42 U.S.C. § 2000e-5), the Fourteenth Amendment to the United States Constitution, and for retaliation and a hostile work environment.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1391. This Court also has supplemental jurisdiction over pendent state law claims pursuant to 28 U.S.C. § 1367.

3. The events that gave rise to this lawsuit took place in Floresville, Texas.

4.      Venue is appropriate in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because all Plaintiff and all Defendants reside in the Western District. Venue is also appropriate in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in the Western District of Texas.

5.      This court has jurisdiction to hear the merits of Plaintiff's claims due to the federal question raised pursuant to the federal claims made, including claims under Title VII.

## PARTIES

6.      Plaintiff, Christopher Perez, is a citizen of Floresville, Texas, and a former Floresville Police Department officer. Plaintiff has been, at all times relevant to this action, a citizen and a resident of Texas and a state certified peace officer.

7.      Defendant City of Floresville operates the Floresville Police Department, a law enforcement agency, and is a municipality capable of being sued under Texas law. The City of Floresville ("City") is the legal entity responsible for the Floresville Police Department ("FPD"). Plaintiff bases all applicable and appropriate claims as to the Defendants City and the FPD on the doctrine of municipal liability pursuant to *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

8.      Defendant Lorenzo Herrera ("Chief Herrera"), was at all times relevant, the City of Floresville Chief of Police. In that capacity, Chief Herrera served in a supervisory and policymaking role with FPD and was acting under the color of law at all times relevant to this action. Upon information and belief, Chief Herrera has been, at all times relevant to this action, a citizen and resident of Texas.

9. Defendant Billy Herrera ("Lt. Herrera"), was at all times relevant, a lieutenant with the FPD. In that capacity, Lt. Herrera serves in a supervisory and policymaking role within the FPD and was acting under the color of law at all times relevant to this action. Upon information and belief, Lt. Herrera has been, at all times relevant to this action, a citizen and resident of Texas.

10. Defendant Thomas Silvas ("Sgt. Silvas") is employed by the FPD as a sergeant and was acting under the color of law at all times relevant to this action. Upon information and belief, Sgt. Silvas has been, at all times relevant to this action, a citizen and resident of Texas.

11. In committing the acts and omissions herein described, Defendants have, separately or in concert, been and are acting under the color of law, the statutes, ordinances, regulations, customs, policies of the State of Texas or the City of Floresville.

## STATEMENT OF FACTS

12. Plaintiff resides in Floresville, Texas, and was a police officer with the FPD from November 9, 2022, until March 2, 2023. Plaintiff was an employee of the FPD at the time of the events that are the basis for this lawsuit and was subjected to unlawful and violative acts by the Defendants as alleged herein.

13. At the core of Plaintiff's lawsuit is the fact that during the brief period of time that he was a police officer with the FPD, he witnessed and reported numerous FPD policy violations and unlawful acts by his immediate supervisor and training officer, Sgt. Silvas. Plaintiff reported Sgt. Silvas' actions to Sgt. Silvas supervisor, Lt. Herrera and Chief Herrera, neither of whom took any action against Sgt. Silvas, but rather fired Plaintiff for reporting these incidents. Although there are numerous policy violations that Plaintiff reported to Lt. Herrera and Chief Herrera, they were not the most alarming incidents by Sgt. Silvas that Plaintiff reported. Plaintiff

reported Sgt. Silvas' interference with Plaintiff's felony arrest of an individual who had heroin in his possession, the use of racial slurs during a traffic stop, and, most alarmingly, Sgt. Silvas' self-professed violations of an arrestee's civil rights and then the destruction of video evidence of that crime. Moreover, after Plaintiff first began reporting Sgt. Silvas' actions to his superiors, Sgt. Silvas began a pervasive campaign of harassing Plaintiff and creating a hostile work environment against Plaintiff.

## THE DRUG RELATED TRAFFIC STOP

14. On or about December 8, 2022, Plaintiff and Sgt. Silvas were on patrol in Floresville when they pulled over a man on bicycle. Plaintiff, as a rookie with FPD, was tasked with conducting and investigating the traffic stop. During this traffic stop, Plaintiff found that this individual had drug paraphernalia in his possession and then subsequently discovered that he also had heroin in his possession. Plaintiff then began the process of arresting this individual and placed the drug paraphernalia and heroin on the hood of the police unit, a common practice for an arrest of this type. At this point, Plaintiff went to the passenger side of the patrol vehicle and informed Sgt. Silvas that he had found drug paraphernalia and heroin and that he was going to place the man under arrest. Shortly after notifying Sgt. Silvas exited the patrol car and approached the area where the suspect was detained. When the arrestee noticed who the second officer on scene was, Sgt. Silvas, he began pleading with Sgt. Silvas to release him by repeatedly stating "you know me Silvas, you know me."

15. Plaintiff then began processing the heroin as evidence, which was in plain view and on the hood of the car, and was placing the man under arrest when Sgt. Silvas asked Plaintiff "Are you going to arrest him?" Plaintiff replied "Yes, it's a felony." Sgt. Silvas then became

hostile with Plaintiff and started yelling at Plaintiff "I'm asking as your FTO![1] What are you going to do?" Plaintiff replied, "I'm going to arrest him." Sgt. Silvas then kept berating Plaintiff because Plaintiff was placing the suspect man under arrest. These events all occurred in the presence of the arrestee.

16. Plaintiff finished processing the evidence at the scene of the traffic stop and both he and Sgt. Silvas drove the arrestee to the Wilson County jail for processing. After the arrestee was processed, Plaintiff and Sgt. Silvas were leaving the county jail and getting in their patrol car when Sgt. Silvas asked Plaintiff "Is your body camera off?" Plaintiff replied that it was. Sgt. Silvas immediately began yelling and cussing at Plaintiff stating, "If you ever disrespect me again, I'll f****** drop you from FTO." Plaintiff tried to explain that he had not disrespected Sgt. Silvas, but Sgt. Silvas would not let him speak and just continued yelling obscenities at Plaintiff. This incident was an overt attempt by Sgt. Silvas to coerce Plaintiff not to arrest the suspect who had drug paraphernalia and heroin in his possession.

17. On the same date, Plaintiff notified Lt. Herrera of Sgt. Silvas' actions. Lt. Herrera then scheduled a meeting with Plaintiff, Sgt. Silvas, and Chief Herrera on December 14, 2023, regarding Plaintiff's allegations. During this meeting, Chief Herrera told Plaintiff that "We're not going to do anything about this. This is how we do things here." Lt. Herrera also told Plaintiff that he and Chief Herrera were "not going to do anything about it because you're in FTO training." On information and belief, no investigation of Sgt. Silvas' actions was ever conducted nor was any corrective action taken by either Chief Herrera and Lt. Herrera against Sgt. Silvas.

18. After this incident, Sgt. Silvas would repeatedly berate Plaintiff for every perceived mistake or misstep, whether well founded or not. Sgt. Silvas would yell and scream at Plaintiff for FPD procedural violations that Plaintiff did not commit and then deny Plaintiff the

---

[1] FTO is the acronym in law enforcement for Field Training Officer.

opportunity to explain his actions or why he had not violated FPD procedures. For example, on February 24, 2023, Plaintiff was not able to use his regular patrol vehicle because it required maintenance and notified his immediate supervisor, Corporal R. Garcia ("Cpl. Garcia"), of this situation. Cpl. Garcia made the decision to assign another patrol car to Plaintiff and then asked Sgt. Silvas if he had a replacement patrol car for Plaintiff. Sgt. Silvas became enraged and began yelling at Plaintiff and asked him "Why didn't you ask me? Do I smell or something? I'm your direct supervisor and you need to come to me first!" Sgt. Silvas was so enraged that he continued to yell loudly at Plaintiff for what was clearly not a policy violation of any kind. Sgt. Silvas did not even permit Plaintiff to explain that, according to FPD procedures, he had in fact followed the proper chain of command procedures by first asking Cpl. Garcia for permission to use another patrol car. Sgt. Silvas extreme overreaction and unprofessional behavior on February 24, 2023, was just one incident among many where Sgt. Silvas created a hostile work environment for Plaintiff.

## RACIAL SLURS AT A TRAFFIC STOP

19. On January 8, 2023, Plaintiff and Sgt. Silvas conducted a traffic stop at the intersection of 4th Street and Standish in Floresville. Plaintiff stopped the vehicle for speeding, walked over to ask the driver for his driver's license, and came back to the patrol vehicle to check the driver's license and plates. While running the driver's license and plates on the patrol car's onboard computer, Plaintiff handed the driver's license to Sgt. Silvas. Sgt. Silvas noted that he remembered the driver from other interactions with FPD and referenced the driver's daughter, who was a passenger in the car at the time. Sgt. Silvas said, "That's the one that kept saying N*****." Sgt. Silvas then repeatedly kept using the N word in the patrol car, while this conversation was being recorded. Sgt. Silvas used this racist language during the traffic stop

without reference to whether he might be overheard by the father and daughter in the car that had just been pulled over or whether a Floresville citizen might walk by and hear this language.

20. On February 23, 2023, Plaintiff reported this incident via written grievance and handed it to Lt. Herrera. Neither Chief Herrera or Lt. Herrera ever followed up with Plaintiff regarding this incident. On information and belief, neither Lt. Herrera or Chief Herrera ever conducted an investigation into this allegation. Sgt. Silvas' gratuitous use of racist language is not only a violation of FPD's Operating Procedures prohibiting threatening or insulting language, it also violates a police officer's basic duty to refrain from using racist language that may erode the public's confidence in its police officers. The use of racist language by Sgt. Silvas may also indicate that he has a racial bias, which should have been investigated in order to determine whether Sgt. Silvas was racially profiling individuals or violating any individual's civil rights based on race. Sgt. Silvas conduct during this traffic stop shows, as the next incident clearly shows, that he is capable of engaging in illegal conduct.

## THE VIOLATION OF AN ARRESSTEE'S CIVIL RIGHTS

21. On several occasions and in front of several other FPD officers and Wilson County Sherrif's Office ("WCSO") officers, Sgt. Silvas proudly recounted the time he shoved a "dirty diaper" into the mouth of an arrestee and then destroyed the evidence of that crime. He committed this civil rights violation when he was a member of the WCSO. As Sgt. Silvas tells the story, he showed up to home on a domestic disturbance call. The domestic disturbance was between a husband and a wife whom Sgt. Silvas was trying to separate. During this incident, Sgt. Silvas was attempting to speak to the wife and calm her down. Sgt. Silvas grabbed her arm and attempted to sit her down when this woman said "I'm going to have your badge you f****** Mexican." Instead of attempting to control and deescalate the situation, Sgt. Silvas said that he

grabbed a dirty diaper off the floor and shoved it in this woman's mouth. Part of this incident was video recorded on Sgt. Silvas' patrol cars' dashboard camera. More importantly, the audio of this incident, for which Sgt. Silvas was wearing a lapel microphone, was also recorded on the video recording system in his patrol car. When Plaintiff asked when this event happened, Sgt. Silvas just replied with vague and non-specific answers.

22. According to Sgt. Silvas, this woman later filed an Internal Affairs ("IA") complaint with the WCSO. A WCSO IA investigator then conducted an investigation. This IA investigator called Sgt. Silvas into his office and notified Sgt. Silvas that he was being investigated based on the claims made by the woman who had a diaper shoved in her mouth. The IA investigator asked Sgt. Silvas to come to his office. When Sgt. Silvas walked into the IA investigator's office, the IA investigator asked Sgt. Silvas for the video disc from his patrol vehicle, which had recorded the incident. Sgt. Silvas then walked out to his patrol vehicle and retrieved the disc, held up and showed the disc to the IA investigator, and asked the IA investigator "Do you want this?" Sgt. Silvas then broke the disc in half in front of the IA investigator and walked out. The investigation apparently stopped at that point and no action was ever taken against Sgt. Silvas.

23. Sgt. Silvas has told this story numerous times and to numerous individuals in law enforcement in Wilson County, Texas. Sgt. Silvas has committed numerous other civil rights violations against arrestees, violated FPD's policies, bullied and berated his subordinates, but yet he remains active and in good standing with the FPD as of the date of the filing of this lawsuit.

**PLAINTIFF'S TERMINATION FOR REPORTING THESE INCIDENTS**

24. Plaintiff filed three separate workplace grievances and personally informed Chief Herrera and Lt. Herrera of Sgt. Silvas' actions. On March 2, 2023, Plaintiff was called into Chief

Herrera's office ostensibly to discuss Plaintiff's grievances and allegations against Sgt. Silvas. When Plaintiff arrived at the meeting, Lt. Herrera was also in Chief Herrera's office.

25. Once the meeting began, Chief Herrera asked Plaintiff "What's going on?" Plaintiff started telling Chief Herrera about the diaper incident when Chief Herrera cut him off and said that "We're not talking about what happened somewhere else. We're here to talk about what happened here." Chief Herrera didn't let Plaintiff speak about the diaper incident, his many other grievances, or about any other matters, and simply stated "I don't want to hear anything from you. You're fired." Chief Herrera then handed Plaintiff a letter dated March 1, 2023, ("Termination Letter") terminating Plaintiff from his employment with FPD. Plaintiff didn't respond, but rather walked out and turned in his FPD issued equipment.

26. The Termination Letter stated that the reason for Plaintiff's termination was that "Officer Perez is not willing to except [sic] direct orders from Sgt. Silvas" and that Plaintiff incorrectly reported that Sgt. Silvas was not eligible for his position as a sergeant within FPD. Chief Herrera's reasons for terminating Plaintiff are not only pretextual, they are demonstrably false as evidenced by the lack of any specificity as to the failure to follow orders by Sgt. Silva, the lack of any investigation into Sgt. Silvas' egregious conduct, and the fact that Chief Herrera wrote the Termination Letter before the February 23rd meeting, and without permitting Plaintiff to explain or otherwise defend himself against these allegations.

27. The Texas Government Code requires that, before a police officer is terminated, that a copy of a signed complaint be given to the officer within a reasonable time after the complaint is filed, that the complaint is investigated, and that there is evidence to prove the allegation of misconduct. Tex. Gov't. Code § 614.023(a), (c)(1), (c)(2). "Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the

officer or employee." *Id.* at (b). None of these requirements were complied with by Chief Herrera before he terminated Plaintiff. In addition, the Termination Letter was written the day before Plaintiff's scheduled meeting with Chief Herrera showing that Chief Herrera never intended to address the serious allegations against Sgt. Silvas. Chief Herrera's mission was to protect Sgt. Silvas and to retaliate against Plaintiff for reporting Sgt. Silvas' alarming behavior and actions.

28. In a related action, Chief Herrera filed an Employment Termination Report ("F-5") with the Texas Commission on Law Enforcement ("TCOLE") on March 2, 2023, and characterized Plaintiff's termination as "Honorable." This F-5 report is an "official government document" that must be filled out truthfully and must properly characterize the police officer's termination. Tex. Occ. Code § 1701.452(g). In his Termination Letter, Chief Herrera states that Plaintiff was terminated for violating FPD's Operating Procedures that require "Truthfulness – Members shall speak the truth at all times whether under oath or not, in giving testimony, or in connection with any legal official order received, or in connection with official duties." As a result, Plaintiff's termination should have been characterized as "Dishonorable."

29. While Chief Herrera's decision to characterize Plaintiff's termination as "Honorable" appears to be, as an initial impression, a show of leniency on Plaintiff's behalf, there are many reasons it is not. First, Chief Herrera's duty, both to the City and to the public that FPD protects, is to carry out his duties without favor or malice, particularly when he legitimately believes an officer has been dishonest. Second, he is required as the head of a law enforcement agency to truthfully fill out an F-5 Employment Termination Report. *See* Tex. Occ. Code § 1701.452. As such, Chief Herrera was required to characterize Plaintiff's termination report as "Dishonorable" if he legitimately believed that Plaintiff was dishonest and as he stated in his

Termination Letter. A "Dishonorable" termination is required for a police officer "who was terminated by a law enforcement agency or retired or resigned in lieu of termination by the agency for insubordination or untruthfulness." Tex. Occ. Code § 1701.452(b)(3)(B).

30. The real reason that Chief Herrera did not characterize Plaintiff's F-5 Employment Termination Report as "Dishonorable" was that doing so would have provided Plaintiff the opportunity to challenge the "Dishonorable" designation, and the facts underlying that designation, at a hearing before the State Office of Administrative Hearings ("SOAH"). Tex. Occ. Code § 1701.4525. A police officer who has a designation other than Honorable is entitled to challenge that designation before SOAH and FPD would have been obligated to prove Plaintiff's misconduct by a preponderance of the evidence to an administrative law judge ("ALJ"). This administrative hearing would have been conducted with all the procedural and substantive protections found in Texas Government Code Chapter 2001. *Id.*

31. By falsely characterizing Plaintiff's F-5 Employment Termination Report as "Honorable," Chief Herrera was able to claim that Plaintiff was dishonest, as he did in his Termination Letter, but also avoided having to prove the veracity of his claims before an ALJ at SOAH. In making a false entry into Plaintiff's F-5, which as previously stated is an "official government document," Chief Herrera appears to have Tampered with a Government Record because he knowingly made a false entry in a government record and presented that same government record with knowledge of its falsity. Tex. Pen. Code § 37.10(a)(1), (2).

32. Throughout his tenure with FPD, Plaintiff sought to report and bring attention to Sgt. Silvas' outrageous and unlawful conduct. Sgt. Silvas discriminatory conduct was directed at racial minorities, women, and against Plaintiff for simply attempting to properly ethically and professionally do his job as a police officer. The manner in which Lt. Herrera and Chief Herrera

Original Complaint                                                                                                    Page 11 of 15

handled Plaintiff's complaints shows that FPD does not have properly functioning internal complaint and investigation processes. Neither Lt. Herrera or Chief Herrera investigated Plaintiff's claims about Sgt. Silvas unlawful conduct nor did they take corrective action, prompt or otherwise. Moreover, Plaintiff opposed Sgt. Silvas' unlawful actions by both directly communicating his opposition to Sgt. Silvas and by reporting Sgt. Silvas' conduct to Lt. Herrera and Chief Herrera. Plaintiff, as a police officer, reasonably believed this conduct to be unlawful yet he was ignored. Plaintiff also attested to Sgt. Silvas' actions in three sworn grievances to Chief Herrera and, as a result of his participation in the City's processes for reporting such discrimination, he was summarily and without process fired. This is retaliation. As a result of Defendants' actions Plaintiff has suffered from severe depression and various other health and emotional problems.

## CLAIMS

33. Plaintiff has satisfied all procedural requirements and conditions precedent of Title VII. Plaintiff timely filed his retaliation claim with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 23, 2023, alleging Sgt. Silvas' racial and gender discrimination. The EEOC issued its Right to Sue Letter on May 12, 2023.

**FIRST CAUSE OF ACTION**
RETALIATION FOR REPORTING SEX AND GENDER DISCRIMINATIOJ IN VIOLATION OF TITLE VII

34. Plaintiff incorporate by reference the foregoing paragraphs of this complaint as though fully set forth herein.

35. Title VII of the Civil Rights Act protects employees from retaliation or other negative consequences of engaging in protected activity like making a charge or report, or participating in an investigation or proceeding among other protected activities. Defendants

knowingly and with deliberate indifference for the constitutional rights of employees such as Plaintiff, who report illegal activities of another police officer and participated in the inquiry or investigation, was retaliated against by Defendants who took adverse employment action against Plaintiff for engaging in protected activities.

    a. Plaintiff engaged in protected activity by reporting sexually and racially discriminatory comments and conduct, and by filing complaints about the same sexually and racially discriminatory conduct.

    b. An adverse employment action was taken against Plaintiff when he was unlawfully terminated for reporting this conduct.

    c. There is a causal link between the protected activity and the adverse employment action because Plaintiff was terminated the same day he was supposed to speak to Chief Herrera about the complaints he had filed.

## SECOND CAUSE OF ACTION
### HOSTILE WORK ENVIRONMENT

36. Plaintiff incorporate by reference the foregoing paragraphs of this complaint as though fully set forth herein.

37. After Plaintiff initially reported Sgt. Silvas to Lt. Herrera and Chief Herrera, Sgt. Silvas went on a campaign of harassment against Plaintiff and treated him unprofessionally and with complete contempt. Sgt. Silvas subjected Plaintiff to abusive ridicule, embarrassment, and defamatory statements, conduct which continued throughout Plaintiff's tenure with FPD and certainly after he reported it to Chief Herrera and Lt. Herrera.

    a. Plaintiff suffered emotionally due to Defendants' conduct. Plaintiff lost confidence in his ability to perform his duties as a police officer and was subjected to a hostile work environment.

    b. As a result of Defendants' hostile and discriminatory conduct, Plaintiff suffered severe emotional distress, humiliation, mental anguish, and other indignities.

    c. Defendants subjected Plaintiffs to a harassing work environment by retaliating against and intimidating him, acts that were so severe and pervasive that it altered Plaintiff's conditions of employment.

    d. Defendants acted with malice in creating an abusive work environment and disregarded Plaintiff's rights knowing that this conduct would cause serious damage, both physically and emotionally, to Plaintiff's wellbeing.

## PRAYER

WHEREFORE, Plaintiff hereby requests the following relief:

1. An award in the amount to be established at trial as compensation for actual, compensatory, punitive, exemplary, and consequential damages;

2. An award for non-pecuniary damages, including but not limited to damages for mental and emotional distress, emotional pain and suffering, inconvenience and loss of enjoyment of life, in the past and in the future, due to Plaintiff by reason of Defendant's violation of Title VII and a hostile work environment;

3. An award of reasonable attorneys' fees;

4. An award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action; and

5. Any additional relief this Court may deem proper.

Dated: August 11, 2023					Respectfully submitted,

                                                    MUERY, FARRELL, & KELLY, PC
                                                   6200 La Calma Drive
                                                   Suite 100
                                                   Austin, Texas 78752
                                                   Tel: (737) 808-0529
                                                   Fax: (512) 727-6626
                                                   COUNSEL FOR PLAINTIFF


By: _____/s/ Manuel Arambula_____
      Manny Arambula
      State Bar No. 24047423
      Email: manny@texanlegal.com
      E-Service: filing@texanlegal.com